ORIGINAL

FILED IN OPEN COURT
U.S.D.C. Atlanta

OCT 13 2011

JAMES N. HATTEN, Clerk
*Sewell* Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL INFORMATION |
| v. | : |
| | : NO. 1:11-CR-478 |
| RHETT MAUGHON (1) | : |
| RAFAEL VILLARREAL SR. (2) | : |

THE UNITED STATES ATTORNEY CHARGES THAT:

COUNT ONE
(18 U.S.C. § 371)

1.   Beginning in or about November 2001, and continuing until in or about September 2007, in the Northern District of Georgia and elsewhere, the defendants, RHETT MAUGHON and RAFAEL VILLARREAL SR., did knowingly and intentionally conspire, combine, confederate, and agree together, with each other, and with others known and unknown to the grand jury, including individuals with initials M.M., J.W. and K.A.:

(a) to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the United States Department of Treasury in the ascertainment, computation, assessment, and collection of revenue, specifically employment taxes and corporate income taxes; and

(b) to violate Title 8, United States Code, Section 1324(a)(1)(A)(iv), for the purpose of commercial advantage and private financial gain, by encouraging and inducing aliens, that is, J.L.L., M.H.L., A.G., E.M., M.A., A.B., O.G., J.L., F.J., M.P., R.O., J.T., and others, to reside in the United States knowing and in reckless disregard of the fact that such residence in the United States would be in violation of law.

## Background

It is material to the conspiracy that at relevant times:

2. RHETT MAUGHON, RAFAEL VILLARREAL SR., M.M., and J.W. were part-owners of Atlanta Food Authority, Inc., doing business as Atlanta Meat Company (hereinafter "AMC").

3. AMC was in the business of distributing meat products to restaurants in and around Atlanta, Georgia and the southeastern United States.

4. RHETT MAUGHON was the treasurer and chief financial officer for AMC and he was responsible, among other things, for keeping the financial books and records for the company and for supervising the work of bookkeepers who worked in the office.

5. RAFAEL VILLARREAL SR. was responsible, among other things, for recruiting and hiring workers for the company.

Manner and Means of Conspiracy

The manner and means by which the conspiracy was sought to be accomplished included, among other things, the following:

7. Employees hired by AMC, through RHETT MAUGHON, RAPHAEL VILLARREAL SR. and others, were told that their weekly take-home pay would be a certain amount.

8. AMC used a payroll company to prepare weekly payroll checks for its employees and owners. As part of the services provided to AMC, the payroll company submitted quarterly reports (IRS Forms 941) to the Internal Revenue Service that reported the total wages paid by AMC for the quarter. Also for each quarter the payroll company submitted payment deposits on behalf of AMC to the Internal Revenue Service for federal employment taxes withheld by AMC from its employees' and owners' paychecks during the quarter. The amount of payment deposits made to the Internal Revenue Service was dependent upon the total wages reported and paid by AMC to its employees through the payroll company during the relevant quarter.

9. Some of AMC's customers paid cash for products they purchased. RHETT MAUGHON and others did not record all of these cash receipts in AMC's official books and records.

10. AMC paid its employees each week partly by check prepared by the payroll company and partly in cash received from some of its customers, or entirely in cash. RHETT MAUGHON, RAFAEL VILLARREAL SR. and others paid cash to AMC employees at various times. The

total amount paid to the employees in payroll check and cash, or entirely in cash, equaled the weekly take-home pay that the employees were told they would receive as compensation for working for AMC.

11. After cash wages were paid to AMC employees, the remaining unreported cash receipts were divided equally between RHETT MAUGHON, RAFAEL VILLARREAL SR., M.M. and J.W.

12. RHETT MAUGHON and others intentionally did not disclose to the payroll company the cash wages that were paid to AMC employees and owners each week. This caused the payroll company to fail to report the cash wages as part of AMC's quarterly reports (IRS Forms 941) to the Internal Revenue Service, and caused AMC to underpay its quarterly employment taxes.

13. AMC's annual federal income tax returns (IRS Forms 1120) were prepared by a tax return preparer based on books and records that he received from RHETT MAUGHON and others.

14. RHETT MAUGHON and others intentionally did not disclose to AMC's tax return preparer the cash receipts AMC received from some of its customers, and the cash wages paid to AMC employees and owners each week. This caused AMC's tax return preparer to under-report AMC's gross receipts, and to under-report AMC's expenses attributable to wages and salaries, on AMC's annual federal income tax returns (IRS Forms 1120), which were signed under penalty of perjury by M.M.

Overt Acts In Furtherance of Conspiracy

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts were committed in the Northern District of Georgia and elsewhere:

15. On or about December 26, 2003, RHETT MAUGHON created a spreadsheet maintained in AMC's computer system that tracked on a weekly basis the amount of take-home pay received by AMC employees and owners, broken down by cash and payroll check.

16. On or about April 1, 2004, RHETT MAUGHON signed an agreement with a payroll company for it to provide, among other things, payroll and quarterly tax reporting services for AMC.

17. On or about April 30, 2005, the defendants caused AMC's payroll company to submit a quarterly report (IRS Form 941) to the Internal Revenue Service on behalf of AMC for the first quarter of 2005.

18. On or about June 4, 2005, RAFAEL VILLARREAL SR. hired J.L.L. to work as a meat cutter for AMC.

19. On or about July 31, 2005, the defendants caused AMC's payroll company to submit a quarterly report (IRS Form 941) to the Internal Revenue Service on behalf of AMC for the second quarter of 2005.

20. On or about October 31, 2005, the defendants caused AMC's payroll company to submit a quarterly report (IRS Form 941) to the

Internal Revenue Service on behalf of AMC for the third quarter of 2005.

21. On or about January 31, 2006, the defendants caused AMC's payroll company to submit a quarterly report (IRS Form 941) to the Internal Revenue Service on behalf of AMC for the fourth quarter of 2005.

22. On or about April 30, 2006, the defendants caused AMC's payroll company to submit a quarterly report (IRS Form 941) to the Internal Revenue Service on behalf of AMC for the first quarter of 2006.

All in violation of Title 18, United States Code, Section 371.

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

WILLIAM L. MCKINNON, JR.
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 495812

STEVEN D. GRIMBERG
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 312144

Suite 600
75 Spring Street, S. W.
Atlanta, Georgia 30303
(404) 581-6000